WEST SEATTLE GENERAL HOSPITAL, INC., a Washington Corporation

v.

The UNITED STATES.

No. 480–79C.

United States Court of Claims.

Decided March 10, 1982.

Kenneth B. Bley, Beverly Hills, Cal., attorney of record, for plaintiff; Fulop & Hardee, Beverly Hills, Cal., of counsel.

Benjamin F. Wilson, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant; Henry Eigles, Baltimore, Md., of counsel.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.*

## OPINION

BENNETT, Judge:

This case involves the disallowance by the Secretary of Health, Education and Welfare (Secretary)[1] of reimbursement for part of the costs claimed by plaintiff West Seat- tle General Hospital, Inc. (WSGH, INC.) for providing Medicare services during its fiscal years ending in 1971 and 1972. The amount of the alleged underreimbursement is $212,- 969. Jurisdiction is under the Tucker Act, 28 U.S.C. § 1491 (1976), see *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), and our standard of review is whether the Secretary's decision is in accordance with the Constitution and the governing statutes. *Goldstein v. United States*, 201 Ct.Cl. 888, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973).

The question in this case, as will be explained more fully below, is whether it comports with the Medicare statutes for the Secretary to interpret the Medicare regulations[2] not to allow the takeover of a Medicare provider by 100-percent stock purchase and subsequent merger to be equivalent to a purchase of the assets of that provider for the purposes of calculating Medicare cost reimbursement. We hold that such an interpretation of the regulations does violate the governing statutes, and we overturn the Secretary's determination.

West Seattle General Hospital Corp. (WSGH CORP.) was a Medicare provider in the Seattle area. In mid-1969, General Health Services, Inc. (GHS), a Delaware corporation, entered into an agreement with the sole shareholder of WSGH CORP. to acquire all of the WSGH CORP. stock. It is not disputed that this was an arm's- length transaction or that it was always the intent of the parties to merge WSGH CORP. into GHS or into a GHS subsidiary. It is also not disputed that the assets of WSGH CORP. were valued at fair market value for the purposes of the stock acquisi- tion.

---

* This opinion was adopted by the court before Judge Kunzig's death.

1. Currently designated the Secretary of Health and Human Services. We note at the outset that it is not entirely clear, and it has not been argued, whether appeal to this court of a cost disallowance is most properly taken from the Secretary or from the appeals hearing officer of the Medicare fiscal intermediary (Blue Cross in this case). On the facts before us this question is not important because plaintiff's appeal from either would be timely and our review standard would not be applied differently to either one. For convenience, this opinion is written as if appeal is taken from the Secretary's decision.

2. At the time of the events in this case, Medi- care regulations were contained in 20 C.F.R. This opinion uses the current citations to 42 C.F.R. except where the current regulation is different.

The stock acquisition took place on August 15, 1969, with plaintiff WSGH, INC. as the buyer. GHS had formed WSGH, INC. as a subsidiary on July 25th. Due to certain unspecified problems of the ex-shareholder of WSGH CORP., however, merger did not occur at once. Although GHS and WSGH, INC. immediately began to run WSGH CORP. as a branch of their own operations, actual merger of WSGH CORP. into WSGH, INC. was delayed until August 31, 1970.

I

The development of the dispute in this case is involved.

Following the standard practice in tax, accounting and business planning, WSGH, INC. treated its purchase of WSGH CORP.'s stock and its subsequent absorption of WSGH CORP. itself as a two-step purchase of WSGH CORP.'s goodwill and assets. Accordingly, WSGH, INC.: (1) considered that its cost for the WSGH CORP. goodwill and assets was its cost for WSGH CORP.'s stock and (2) considered that the stock purchase marked the effective date of the goodwill and asset acquisition. WSGH, INC. then used these premises in calculating its reimbursable Medicare costs for its fiscal years ending in 1971 to 1974.

The Reimbursement and Facility Audit section of Blue Cross of Washington (Blue Cross), WSGH, INC.'s fiscal intermediary, approved this treatment of the transactions. As reflected in a cost report based on an audit which was completed in March 1972, it was the position of the auditors that the purchase of WSGH CORP.'s goodwill and assets occurred at the 100-percent stock purchase, on August 15, 1969, with the price of the stock being the price of the goodwill and assets. The subsequent merger of WSGH CORP. into WSGH, INC. was mechanically necessary but not significant as to date.

The Bureau of Health Insurance of the Department of Health, Education and Welfare took a different position, however. The bureau refused to view the stock purchase and the merger as a two-step pur-chase of assets and focused on each step independently, assessing its consequences under the Medicare system as if it were the only event that had occurred. Under the bureau's treatment, the stock acquisition was only that, a purchase of stock serving only to relate the parties. It was the merger that was the more important event, a transfer of assets between parties that had become related by the stock purchase.

■ To understand this position of the bureau, its relationship to the Medicare regulations and the full significance of the bureau's focus on the merger as the key occurrence, it is necessary to digress. The purchase of a Medicare provider's stock is not in itself an event that has an effect on the Medicare system. A mere change in stock ownership changes neither the identity nor the operations of a provider, and neither recertification with the Secretary nor a new provider agreement is necessary. 42 C.F.R. § 405.626(c) (1981); cf. 42 C.F.R. § 405.625 (1981) (a change in ownership of a provider otherwise requires recertification). And of course this rule should apply to the bare acquisition of a provider's stock by another provider. Such an acquisition does not affect the acquiring provider's own delivery of services and it affects the provider that issued the stock only to the extent of a change in its stockholders, inconsequential in itself.

■ By contrast, a provider's purchase of assets or investment in equity is an important event for the Medicare system, reimbursable as a cost of providing Medicare services. 42 C.F.R. §§ 405.415(a) (for buildings and equipment) and 405.429(a) (1981) (for a "reasonable return" on equity capital). These regulations carry out the statutory mandate that providers be paid for their actual costs in providing whatever services are necessary to the efficient delivery of health care. 42 U.S.C. §§ 1395f(b), 1395x(v) (1976). An important qualification in cost reimbursement, however, involves situations in which a provider acquires assets from a related entity. In such situations, a provider's actual costs for the assets

do not include whatever profit is charged by the related entity because that component simply is paid by the provider to another part of itself. It does not represent or replace an actual cost to the related parties and should not be reimbursable. Accordingly, Medicare regulations provide for a carry-over cost basis for assets acquired from a related entity. 42 C.F.R. § 405.427 (1981).

The bureau's application of these regulations to the transaction executed by WSGH, INC. and WSGH CORP., refusing to integrate the stock purchase and the merger, stems from a letter of January 24, 1974, from the deputy director for program policy of the Bureau of Health Insurance to an official in the plan reimbursement section of the Blue Cross Association. The purpose of the letter was to outline the difference between a provider's acquisition of stock and a provider's acquisition of assets, as this opinion explains above. After setting out the basic situations, and further that a statutory merger involving two providers, with one of the providers surviving, should be regarded as a purchase of assets by the surviving provider from the nonsurviving provider, the deputy director said:

An important variation * * *, however, is where capital stock has been acquired by a corporation, and the acquired corporation is then merged into the acquiring corporation. Such a transaction is classified as an acquisition of capital stock * * and the subsequent merger is treated as a transaction between related parties * *. An illustration of this type of transaction is where Corporation A purchases the capital stock of Corporation B, the provider. Immediately after the acquisition of the capital stock of Corporation B, there is a statutory merger of Corporation B and Corporation A, with Corporation A being the surviving corporation.

From this passage came the bureau's characterization of the transaction between WSGH CORP. and WSGH, INC., that WSGH, INC.'s purchase of WSGH CORP.'s stock merely related the parties and that the merger was WSGH, INC.'s acquisition of assets from a related party, WSGH CORP.

With this background it can be understood that the bureau's method of classification has very different cost reimbursement consequences than flow from the standard practice of integrating a stock purchase and a merger such as occurred in this case. Under the bureau's view, WSGH, INC.'s cost for WSGH CORP.'s goodwill and assets is not the cost to WSGH, INC. of WSGH CORP.'s stock but is WSGH CORP.'s own cost, under the cost carry-over regulation for related entities. Further, the effective date of the goodwill and asset acquisition is not the date of the stock purchase but is the date of the merger, August 31, 1970. The adverse effect to WSGH, INC. of reducing the amount of its reimbursable costs is obvious. The adverse effect of shifting the date of acquisition is apparent, however, only when it is realized that a change in the Medicare regulation for equity investment reimbursement, effective after the stock purchase but before the merger, now bars the reimbursement for goodwill that had been allowed. *Compare* 20 C.F.R. § 405.-429(a) (1970) (allowing reimbursement for goodwill) *with* 42 C.F.R. § 405.429(b)(2) (1981) (not allowing reimbursement for goodwill acquired on or after August 1, 1970).

Blue Cross auditors were reluctant to impose the bureau's classification, and the results that would flow, on the dealings between WSGH, INC. and WSGH CORP. By a letter of October 23, 1975, the manager of the Blue Cross audit department defended to the bureau his original characterization of the transaction as one integrated asset and goodwill purchase. The bureau insisted, however, by a letter of November 10, 1975, that WSGH, INC.'s cost reports be reopened, and Blue Cross finally agreed to do so. For its fiscal years ending in 1971 to 1974, WSGH, INC. was allowed reimbursement for the assets acquired from WSGH CORP. only on WSGH CORP.'s carry-over cost, and it was not allowed reimbursement for WSGH CORP.'s goodwill at all.

II

The procedural history of this case is also complicated.

Although four cost reporting fiscal years were reopened, only the first two, for WSGH, INC.'s fiscal years ending in 1971 and 1972, are before this court. Pursuant to a statutory change in review procedures that affected WSGH, INC.'s fiscal years ending in 1973 and 1974, WSGH, INC.'s claims for those years have followed a different course.

Those later claims have already been resolved. Under 42 U.S.C. § 1395oo (1976), WSGH, INC.'s claims were heard first by a Provider Reimbursement Review Board (PRRB), which agreed with Blue Cross' original characterization and reversed the disallowances. Review by the Secretary resulted in a reversal of the PRRB, however, and WSGH, INC. then filed for judicial review in the United States District Court for the Western District of Washington. Proceedings there were stayed pending resolution by the Ninth Circuit of a case presenting almost exactly the same issue as WSGH, INC. had presented to the district court: whether a 100-percent stock purchase followed by a liquidation is equivalent to a purchase of assets for the purposes of Medicare reimbursement. When the Ninth Circuit decided that question affirmatively, *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123 (1980) (PCME), WSGH, INC.'s claims in the district court were settled accordingly, by agreement.

The procedure for reviewing WSGH, INC.'s claims for its fiscal years ending in 1971 and 1972 is determined by 42 U.S.C. § 1395ff (1970) (superseded by 42 U.S.C. § 1395oo (1976)) and by the Tucker Act, 28 U.S.C. § 1491 (1976), as applied to Medicare reimbursement claims by this court in, *e.g.*, *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). First was a hearing before a Blue Cross Association Medicare Provider Appeal hearing officer who affirmed the disallowances. The hearing officer had before him the record of the PRRB. The Secretary

then affirmed the hearing officer, and WSGH, INC. filed here. Prosecution of the action was delayed at the request of the defendant, however, until the Ninth Circuit's decision in *PCME*, and further delayed while defendant decided whether or not to seek certiorari review of *PCME* by the Supreme Court. Defendant did not.

The case is now before us with the accumulated materials of two routes of administrative review, a district court proceeding and a Ninth Circuit decision on a very similar point that was dispositive of WSGH, INC.'s claims for its fiscal years ending in 1973 and 1974. We recognize that none of these decisions is binding on us.[3]

### III

We come at last to the merits of this case.

The principal question under our standard of review[4] is whether it is in accordance with the Medicare statutes for the Secretary to read the Medicare regulations not to allow WSGH, INC.'s purchase of WSGH CORP.'s stock and its subsequent absorption of WSGH CORP. itself to be equivalent to a purchase of WSGH CORP.'s goodwill and assets for the purposes of Medicare cost reimbursement. As we have outlined, WSGH, INC. contends for application of the standard practice in tax, accounting and business planning, that such a stock purchase and merger as were executed between the parties simply should be considered as a two-step purchase. Defendant wishes to view the steps independently, focusing on the merger between WSGH, INC. and WSGH CORP. as a transaction between related parties.

At the outset we note that WSGH, INC.'s argument is very strong. It is undisputed that it was always the intention of GHS to follow the stock purchase with a merger, and it is plain that the transactions were planned as a way to acquire WSGH CORP.'s goodwill and assets. Their cost to

---

3. It is unnecessary to discuss WSGH, INC.'s contention that offensive collateral estoppel effect should flow from *PCME* since we reach the merits of this case.

4. See paragraph 1 of this opinion.

WSGH, INC. was the cost of the WSGH CORP. stock, and that seems clearly to be the "cost actually incurred" that the Medicare statutes provide is reimbursable. 42 U.S.C. § 1395x(v)(1)(A).

Defendant counters, however, that its position must be upheld, regardless of the force of plaintiff's argument, if defendant's argument is also found to be reasonable, and we accept this as a fair paraphrase of our standard of review for this case. The Secretary will be affirmed if his actions are in accordance with the governing statutes.

Defendant contends that the reasonability of its position, of its focus on the merger step in the transaction, is in the need to give 42 C.F.R. § 405.427 (1981), the related-entities regulation, its full prophylactic effect. Defendant cites this court's opinion in *Stevens Park Osteopathic Hospital, Inc. v. United States*, 225 Ct.Cl. ——, 633 F.2d 1373 (1980), where we stressed the preventive nature of the rule and said:

> ██ C.F.R. § 405.427(c)(2) does not call for an inquiry into the fairness or equity of a transaction between related parties. This regulation, like other "related organization" rules, is intended to have a "prophylactic" effect in guarding against bad faith dealing between organizations related through common control without inquiry into particular circumstances.

*Id.* at ——, 633 F.2d at 1379.

*Stevens Park* does not give defendant the support that it thinks. That case involved parties whose relatedness was not seriously contested[5] but who complained of the application of the related entities regulation nevertheless. The point of our opinion, in the passage quoted above, is that the need for a clear and easily applicable regulation to prevent abusive self-dealing is such that some overbreadth in the coverage of that regulation is justifiable. Therefore the actual reasonableness of the transaction in *Stevens Park* was not important. The present case is very different, however, be-

cause it is the very relatedness of the parties that is in dispute. Defendant wants to use the prophylactic nature of 42 C.F.R. § 405.427 (1981) as an argument to find that relatedness but we think defendant goes too far. The prophylactic nature of a rule can excuse overbreadth but it should not be made a reason for it. Whether or not parties are related must be determined independently of the prophylactic nature of 42 C.F.R. § 405.427 (1981), which can then only help justify the application of the regulation to situations in which no abuse actually is found.

The relatedness of WSGH, INC. and WSGH CORP. is the core of the dispute before us, and this returns us then to the very question with which we started, whether the stock purchase and the merger should be viewed as integrated or not. We get to the effect of the related entities regulation only if they should not be.[6]

Defendant has advanced no acceptable reason for the Secretary's position. Patently, WSGH, INC.'s "cost actually incurred" for WSGH CORP.'s goodwill and assets was the cost of WSGH CORP.'s stock. This is consistent with the common understanding in financial fields, *see PCME* at 132, and we think that it ignores the plain substance of the transaction not to recognize that the stock purchase and the merger had no significant separate purposes. *See id.* The Secretary's actions take no count of the transactions as they actually took place, and so those actions clearly fail to meet the governing statutory requirement that reimbursement is due on "actual" costs. 42 U.S.C. § 1395x(v)(1)(A) (1976). Further, we do not hesitate to say that those actions plainly have frustrated the statute. *See PCME* at 133.

We note that defendant has placed much emphasis on this court's decision in *Monterey Life Systems, Inc. v. United States*, 225 Ct.Cl. ——, 635 F.2d 821 (1980), and the decision of the Fifth Circuit in *Homan &*

---

**5.** The parties had been related by common ownership for almost 20 years. *Stevens Park*, 225 Ct.Cl. at ——, 633 F.2d at 1374–75.

**6.** The Ninth Circuit also recognized the antecedent nature of the relatedness question in *PCME*, 633 F.2d at 132–33.

*Crimen, Inc. v. Harris*, 626 F.2d 1201 (1980), that the purchase of 100 percent of the stock of a provider does not allow revaluation of the provider's assets for the purposes of Medicare cost reimbursement. Neither of those cases involved a subsequent merger or liquidation, however, and so there was not the integrated transaction that is key to the present case. We repeat that neither WSGH, INC.'s acquisition of WSGH CORP.'s stock nor its subsequent absorption of WSGH CORP. should be viewed apart from the other if the transaction is to be understood properly.

We also note that defendant has asserted that the parties were free at any time after the stock purchase not to carry out the merger, and that the application of the Medicare regulations should not depend so heavily on the following out of something as nonobjective as intent. For this case, we are not bothered by this objection, because whatever possible abuses may exist did not happen. It is an open question whether the Secretary could promulgate regulations to restrict a provider's acquisition of assets to certain methods or to require the transactions to fit certain time schedules.[7] We reserve our opinion on these matters for a case that properly raises them. *See PCME* at 136 n.41.

It remains only to say that the effect of this opinion is to fix WSGH, INC.'s pur-

chase of WSGH CORP.'s stock as the operative event of the transaction between them, that WSGH, INC.'s cost reimbursement for its fiscal years ending in 1971 and 1972 should be calculated using the cost to WSGH, INC. of WSGH CORP.'s stock and that WSGH, INC. acquired the goodwill of WSGH CORP. before the effective date of the change in 20 C.F.R. § 405.429 (1970). We intimate no opinion about the method of computation for goodwill, this issue not having been argued to us. Of course, the computation should follow the Secretary's applicable regulations.

Accordingly, based on the foregoing, we hold that plaintiff is entitled to a recalculation of its Medicare reimbursements for its fiscal years ending in 1971 and 1972, in accordance with the characterization of its transaction with WSGH CORP. as explained in this opinion. Plaintiff's motion for summary judgment is granted, defendant's cross-motion is denied and judgment is entered for plaintiff. The case is referred to the trial division for computation of the amount of recovery.

---

7. For example, the very issue of when a stock purchase should be integrated with a merger that follows it is addressed by I.R.C. § 334(b)(2), allowing that the merger must occur within 2 years.