**ST. VINCENT'S MEDICAL CENTER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–816C.**

United States Court of Federal Claims.

Aug. 30, 1993.

Robert E. Mazer, Baltimore, MD, for plaintiff. Charles M. English, Jr., Leslie Demaree Goldsmith, and Vanel D. Brown, of counsel.

Carol L. Wallack, with whom were Acting Asst. Atty. Gen. Stuart E. Schiffer, David M. Cohen, and Jeanne B. Davidson, Washington, DC, for defendant. Charles Bailey, U.S. Dept. of Health and Human Services, of counsel.

## OPINION

BRUGGINK, Judge.

Defendant has moved to dismiss this action for lack of jurisdiction. It contends that plaintiff, a provider of Medicare services, is in the wrong forum. After consideration of the motion materials, the applicable law, and in light of oral argument, the court concludes that defendant is correct, and that the action should be dismissed.

## FACTUAL AND STATUTORY BACKGROUND [1]

St. Vincent's Medical Center, a Florida hospital, entered into an agreement with the Department of Health and Human Services ("HHS") to provide hospital services to Medicare beneficiaries pursuant to Title XVIII of the Social Security Act. 42 U.S.C. §§ 1395 *et seq.* (1988) ("Act" or "Medicare Act"). A sample of the agreement, which consists of only one page, is attached to the complaint. It incorporates by reference the statutory and regulatory provisions applicable to obtaining reimbursement for such services. The attached agreement was executed in April 1987. Comparable agreements were executed for periods before and after 1987.

St. Vincent's claim arises under Part A of the Medicare program, which authorizes payment, among other things, for hospital care. 42 U.S.C. §§ 1395c–1395i–2. Congress has delegated certain administrative responsibilities under the Medicare program to the Health Care Financing Administration ("HCFA"). In addition, Blue Cross and Blue Shield of Florida, Inc. ("Blue Cross") serves as fiscal intermediary for certain acute care hospitals, including St. Vincent's. The applicable regulations require providers to submit to the fiscal intermediary reports that reflect costs incurred during the preceding fiscal year, and that break out costs attributable to Medicare services. 42 C.F.R. § 405.-1803. Providers may receive reimbursement for the reasonable cost of certain medical services provided to recipients. 42 U.S.C. § 1395f(b). The fiscal intermediary analyzes and audits the cost report and furnishes the provider with a Notice of Program Reimbursement ("NPR"), which reflects the amount to which it believes the provider is entitled. 42 C.F.R. § 405.1803. Providers that are dissatisfied with the intermediary's final determination of the amount of reimbursement may, within 180 days, request a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395*oo*(a).

With respect to cost reporting periods ending before October 1, 1983, 42 U.S.C. § 1395f controls reimbursement. This section, insofar as relevant here, permits payment either for the reasonable cost of the service, or for the customary charge, whichever is less. Reasonable costs, in turn, are defined in § 1395x(v) as "the cost actually incurred, excluding therefrom any part of incurred cost unnecessary ..." 42 U.S.C. § 1395x(v) (1988). Plaintiff alleges that the pre–1983 "reasonable cost system" reimbursed providers for the cost of operating the hospital physical plant, including the cost of electricity.

After October 1, 1983, acute care hospitals became subject to the Prospective Payment System ("PPS"). Social Security Act Amendments of 1983, Pub.L. No. 98–21, 97 Stat. 165 (1983), codified at 42 U.S.C. § 1395ww(d) (1988). Reimbursement under this system, which became fully effective in 1987, was not directly tied to actual or reasonable costs. Instead, hospitals were to be paid based on predetermined rates for particular treatments. HHS was to classify hospital discharges into diagnosis-related groups ("DRG"). *Id.* § 1395ww(d)(4)(A). Each DRG was to be assigned an appropriate weighting factor to reflect the relative degree of utilization of hospital resources. *Id.* § 1395ww(d)(4)(B).

During the four-year transition period to full implementation of PPS, reimbursement was based on a sliding scale, reflecting a combination of hospital-specific costs and PPS determined costs, with the latter costs taking on a larger proportion of reimbursement over time. The hospital-specific costs were to be based on allowable operating costs in a base year. 42 U.S.C. § 1395ww(d)(1)–(3); 42 C.F.R. §§ 412.62(a), 412.63(a) (1989). With respect to St. Vincent's, the base year was calendar 1982.

The claim at issue involves the cost to St. Vincent's of electricity consumed between 1977 and 1986. Because of a malfunction of the electrical metering system, the power company did not bill the hospital for certain power charges until 1986. The hos-

---

1. The facts are drawn from the complaint.

pital's cost report for 1985, submitted in 1986, estimated electrical expenses at $1.5 million. On December 6, 1986 St. Vincent's paid the power company $2,569,435. The hospital used that amount to calculate its claimed reimbursement on its 1986 cost report. It did not claim the cost under the transitional PPS methodology, but rather, as a "below the line expense" on the theory that if the meter had been properly installed, HCFA would have reimbursed the hospital for its reasonable costs for electricity, at least prior to October 1, 1983. Such reimbursement would have been approximately $332,655.[2]

One additional effect of assigning the electricity costs nunc pro tunc back to the relevant consumption years is that some part of those costs would have been assigned to 1982. The substance of plaintiff's complaint is that the cost reports submitted for the years 1983 through 1987, prepared before discovery of the error, do not reflect what would otherwise have been a higher base year cost for 1982. According to the hospital, if the transitional years were correctly recalculated in light of the electricity charges prior to 1983, it would result in additional reimbursement of approximately $169,903.

Plaintiff's brief recites that the reason given by the intermediary, Blue Cross, for rejecting electricity costs in the 1985 report was that the actual amounts due had not yet been determined.[3] When plaintiff asserted the actual payment as a "below the line" expense for 1986, Blue Cross rejected it as a non-reimbursable operating expense. In the NPR of December 15, 1989, Blue Cross reclassified the electricity expense as a 1986 operating cost. Because 1986 costs were subject to the PPS methodology, which did not contemplate separate repayment of utility costs, Blue Cross denied reimbursement. Plaintiff appealed the denial to the PRRB, apparently requesting that the 1985, 1986, and 1987 cost years be calculated using pre-PRS methodology with respect to the electrical costs, or that they be treated as a below the line expense in 1986.[4] Blue Cross' determinations with respect to the 1985, 1986 and 1987 reports are thus still pending at the PRRB. During oral argument, counsel for St. Vincent's conceded that the PRRB appeal puts at issue all the electrical expenses.

## DISCUSSION

The government's motion raises a substantial issue as to the court's jurisdiction. There is no question that with respect to cost reporting periods ending prior to 1973, the law of this circuit has been that claims for reimbursement under the Medicare statute could be filed in this court. *Appalachian Regional Healthcare, Inc. v. United States*, 999 F.2d 1573 (Fed.Cir.1993); *Spokane Valley Gen. Hospital, Inc. v. United States*, 231 Ct.Cl. 550, 688 F.2d 771 (1982); *West Seattle General Hospital, Inc. v. United States*, 230 Ct.Cl. 132, 674 F.2d 899 (1982); *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). It is also clear that substantial legislative changes were made, effective in 1973 and 1975, which spoke to the nature of the judicial review available in Medicare disputes. In 1973 Congress established the PRRB to review most Medicare reimbursement claims in excess of $10,000. Social Security Act Amendment of 1972, Pub.L. No. 92–603, § 243(a), 86 Stat. 1420 (1972) (codified as amended at 42 U.S.C. § 1395*oo* (1988)). Only limited judi-

---

**2.** Apparently plaintiff did not seek Board review of the 1977 through 1984 cost years because more than 180 days had lapsed between their close and the discovery of the error. *See* Complaint ¶ 25; 42 U.S.C. § 1395*oo*(a). Reopening the intermediary's decisions, at least for some of the cost reports, would also presumably have been barred by the passage of more than three years. 42. C.F.R. § 405.1885(a).

**3.** The hospital does not allege that it sought to reopen its cost reports for the period 1977–1984 in order to recapture directly, or as the result of higher base year costs, the costs attributable to the late electricity payment.

**4.** Although not explicitly recited in the complaint, apparently St. Vincent's also included electricity costs, or a portion thereof, in its 1987 cost report.

cial review of PRRB decisions was available. 42 U.S.C. § 1395oo(f) (Supp. II·1972).

In 1974 Congress amended the Medicare Statute to provide for a more general judicial review. Social Security Act Amendment of 1974, Pub.L. No. 93–484, § 3, 88 Stat. 1459 (1974) (codified as amended at 42 U.S.C. § 1395oo (1988)). With subsequent modifications, the relevant section now reads as follows:

> Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, review of any final decision of the Board, or of any reversal, affirmance or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.... Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District court for the District of Columbia and shall be tried pursuant to the applicable provision under chapter 7 of title 5 ... notwithstanding any other provisions in section 405 of this title.

42 U.S.C. § 1395oo(f) (1988).

With respect to reporting periods ending after June 30, 1973 providers could thus challenge a decision of the PRRB in district court. This same section also gives providers

> the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received.

*Id.*

The primary thrust of the defendant's motion is that the creation of a broader remedy in the district courts repealed by implication whatever Tucker Act remedy may have pre-existed those legislative changes. Defendant correctly points out that the Court of Claims and this court almost without exception have refused to accept jurisdiction with respect to post–1973 Part A reimbursement claims. *See, e.g., Alabama Hospital Ass'n v. United States,* 228 Ct.Cl. 176, 656 F.2d 606 (1981); *Del Puerto Hospital v. United States,* 25 Cl.Ct. 243 (1992); *St. Luke's Medical Center v. United States,* 22 Cl.Ct. 322 (1991); *Alexander Hospital, Inc. v. United States,* 5 Cl.Ct. 62, 70 (1984); *accord Spokane Valley General Hospital, Inc.,* 231 Ct.Cl. at 553–54, 688 F.2d at 774–75.

Most recently, the Federal Circuit reversed the decision of the Claims Court in *Appalachian Regional Healthcare, Inc. v. United States,* No. 205–88C (Cl.Ct. Aug. 9, 1991), which also was a post–1973 claim for Medicare Part A reimbursement. There the plaintiff was unable, due to the lapse of time, to take advantage of the invalidation of a regulation dealing with the cost of malpractice insurance. The trial judge found that because plaintiff no longer had a remedy in the district court, it could proceed here with its claim. The Federal Circuit disagreed, *Appalachian Regional Healthcare, Inc. v. United States,* 999 F.2d 1573 (Fed.Cir.1993), finding that the reason the plaintiff had no recourse in the district court was its conscious decision not to timely challenge before the PRRB the validity of the particular regulation at issue there. Critical to its analysis was the Supreme Court's holding in *Bethesda Hospital Ass'n v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988), in which the Court determined that lack of authority on the part of the PRRB or a fiscal intermediary to set aside a challenged regulation was not a justification for circumventing the statutory scheme, which required providers to submit all claims initially to the board. Failure to have the PRRB declare its inability to provide relief could not thereby generate a remedy outside the statute. *Appalachian Regional Healthcare,* 999 F.2d at 1578.

This string of decisions arguably is not directly on point, however. Unlike the providers in the cases cited, plaintiff argues that its predicament was not of its own

making. The hospital claims that it did not lose a remedy by ignoring appeal rights. Taking the complaint at face value, the hospital was unaware of a basis for seeking a readjustment until 1986, and after that point, most of the cost years at issue could not, under the regulations, be reopened. *See* 42 C.F.R. § 405.1885(a). It argues that the case with facts most directly analogous to St. Vincent's circumstances is *Mt. Sinai Medical Center v. United States*, 13 Cl.Ct. 561 (1987) *reh'g denied,* 23 Cl.Ct. 691 (1991). That decision was plainly invalidated in part in the reversal of *Appalachian Regional Healthcare*, 999 F.2d 1576. There were two elements to Mt. Sinai's claim, however, and only one was affected by the reversal. In the unaffected element of the claim, the hospital sought to reopen closed accounting years due to a 1982 state assessment for a malpractice compensation fund arising out of new legislation. The assessment could be traced to cost years 1976–82, some of which were beyond the three year limitation on reopening of board determinations. The Claims Court permitted the hospital to sue under the Tucker Act, because the administrative remedy appeared to be unavailable. *Mt. Sinai*, 13 Cl.Ct. at 566.

There is thus some support for the contention that the amendments to the Medicare Act did not eliminate what remained of this court's jurisdiction to review denials of Medicare reimbursement claims in excess of $10,000. *Mt. Sinai* is not binding precedent, however, and the court must be satisfied that jurisdiction exists.

Because the current statutory construct does not explicitly bar jurisdiction in this court, the defendant's argument against jurisdiction partakes of some indirectness, drawing primarily from generalized principles. It begins with the well known maxim that waivers of sovereign immunity must be explicitly and strictly construed. Although most Americans would reject the notion that they are ruled by a sovereign, the more democratic principle is well-established that only the people acting through the legislature can authorize withdrawals from the treasury. Because of the prolif-

eration of the representatives of government, and the consequent opportunities for mischief, the considered judgment of nearly two centuries of American jurisprudence remains that if the matter is in doubt the best course is to refrain from recognizing an action for monetary relief until the legislature makes its wishes more clearly known.

■ This anchor to defendant's argument is not mere verbiage, but a factor of continuing vitality in assessing claims against the government. *See U.S. v. Idaho, ex rel. Director, Idaho Dept. of Water Resources,* —— U.S. ——, 113 S.Ct. 1893, 123 L.Ed.2d 563 (1993) ("This Court has been particularly alert to require a specific waiver of sovereign immunity before the United States may be held liable for monetary exactions in litigation."); *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 1178, 1183, 122 L.Ed.2d 548 (1993); *United States v. Kubrick,* 444 U.S. 111, 117–118, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979); *United States v. Chemical Foundation Inc.,* 272 U.S. 1, 20–21, 47 S.Ct. 1, 71 L.Ed. 131 (1926). Waivers of federal sovereign immunity must be unequivocally expressed in the statutory text. *United States Dept. of Energy v. Ohio,* —— U.S. ——, ——, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992); *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992); *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). Uncertainties must be strictly construed in favor of the United States, *Ardestani v. INS,* —— U.S. ——, ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991), and not enlarged beyond what the language of the statute requires, *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–686, 103 S.Ct. 3274, 3277–3278, 77 L.Ed.2d 938 (1983).

■ The second precept defendant utilizes is a corollary of the first. It is this: when a subsequent statute appears to create a specific remedy with respect to what was previously a generalized Tucker Act remedy, the typical presumption against repeals by implication does not apply. The

reason is that although courts normally disfavor construing a statute in such a way that a repeal by implication results, they disfavor implicit waivers of sovereign immunity to an even greater degree. Because such waivers must be unequivocal, the very existence of a subsequent, more specific remedy creates uncertainty as to the vitality of the general Tucker Act remedy. *See United States v. Fausto*, 484 U.S. 439, 454–55, 108 S.Ct. 668, 677–678, 98 L.Ed.2d 830 (1988); *Harris v. United States*, 841 F.2d 1097, 1100–01 (Fed.Cir. 1988); *Fiorentino v. United States*, 221 Ct.Cl. 545, 555, 607 F.2d 963, 969–70 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980); *Puget Sound Power & Light Co. v. United States*, 23 Cl.Ct. 46, 56–57, *appeal dismissed*, 944 F.2d 912 (Fed.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992).

One of the decisions cited by the court in *Fiorentino* for the proposition that instances of partial repeal of the Tucker Act by subsequent legislation are "common," 221 Ct.Cl. at 555, 607 F.2d at 969–70, is *Whitecliff*, 210 Ct.Cl. 53, 536 F.2d 347. In some respects this is an odd choice of support.[5] In *Whitecliff*, the court held that the absence of a remedy in the Act for the specific circumstances at issue distinguished the facts from *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), in which the Supreme Court ruled that § 405(h) precludes district court review of social security benefit decisions, except insofar as Congress specifically authorized review elsewhere in the Act. With respect to pre–1973 actions, the Court of Claims held that its jurisdiction was not affected by the Act, because the remedy afforded applied only to claims regarding 1973 and forward. Accordingly, no repeal was announced in *Whitecliff*. Instead, the court rejected the government's invitation to decline jurisdiction.

Nevertheless, *Whitecliff* is helpful to the government in the present context, because a fair inference from it is that *if* there had

been a remedy in the district court, the Court of Claims would not have found Tucker Act jurisdiction. In fact, the court recites in a footnote that "[f]or disputes over reimbursement with respect to fiscal periods ending on or after June 30, 1973, Congress has largely resolved the problem of judicial review; only disputes where the amounts in controversy are less than $10,-000 are left untreated by statute." 210 Ct.Cl. at 58 n. 8, 536 F.2d at 351 n. 8. This reading is emphasized in *John Muir Memorial Hospital, Inc.*, 221 Ct.Cl. 843, 845–46, 1979 WL 10395 (1979). The argument by plaintiff in that case is similar to the one advanced here. There the plaintiff was seeking to reopen cost reports for 1973 and 1974. Because it had relied on an erroneous cost manual published by the agency, plaintiff neglected to claim certain costs. The first action, commenced in the district court, was dismissed for failure to timely exhaust administrative remedies. The Court of Claims was unsympathetic to the argument that, because the district court was without jurisdiction, then, under *Whitecliff*, there was no bar to a Tucker Act remedy:

> Under these canons, nobody seriously contends that 42 U.S.C. § 1395oo(f) does not in general cancel whatever consent was previously given to suits by providers here, except claims under $10,000 and claims as to fiscal years ended before June 30, 1973. To suppose that, in addition, consent survives as to any year where the provider has failed to exhaust its administrative remedy, as § 1395oo(f) requires, is to do violence to the whole doctrine of strict construction of the consent to be sued.

221 Ct.Cl. at 846. The court held that because plaintiff could have challenged the capitalization rule in a timely administrative proceeding, it was blocked from proceeding in the Court of Claims. It is noteworthy that the court in *John Muir Hospital* apparently treats as relevant the fact

---

**5.** As was its reliance on *Matson Navigation Co. v. United States*, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932), and *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In

neither case did there appear to have been a pedigreed Tucker Act remedy for the relief sought. In short, there was nothing to repeal.

that the plaintiff did not invoke 42 C.F.R. § 405.1885, under which the board may exercise its discretion to reopen the cost reports, even though they are beyond the 180 day period for seeking board review.[6]

The Government argues that the hospital has in effect conceded the availability of administrative and judicial review of its claim by appealing the determinations of the intermediary with respect to the 1985, 1986, and 1987 cost reports to the PRRB. If plaintiff were successful on those appeals, all of the costs at issue would be reimbursed, even those theoretically allocable to earlier years. This apparent inconsistency between St. Vincent's pursuit of an appeal to the PRRB and its jurisdictional argument in this court was addressed by plaintiff's counsel at oral argument. The hospital's concern, he explained, is that the result before the PRRB is a foregone conclusion. If the electrical expenses are dealt with exclusively in terms of law applicable in 1986, the PRRB will allegedly deny the claim because the PPS system only reimburses on the basis of specific medical procedures. Nor would the result be more favorable if the expenses were redistributed over years in which electricity was consumed. The PRRB might treat the appeal of the 1986 cost report as an ill-disguised and untimely attempt to reopen cost reports for the period 1977–1984. If that occurs, the hospital reasons, the PRRB would be obligated to follow the regulations limiting reopenings to three years. *See Bowen*, 485 U.S. at 406–08, 108 S.Ct. at 1259–60.

■ Jurisdiction in this court is not posited on so slender a reed. Even if the hospital had not appealed to the PRRB, the court would have concluded that its remedy, if any, lay there. Plaintiff paid the electrical charges in 1986. They were based on electricity consumed in previous years. Without speaking to the possible merits of plaintiff's pending claim, it would appear at least to have a colorable argument that, under § 1395f and § 1395x(v), it incurred reimbursable costs prior to 1986. Its pending appeal makes the alternative request to treat the 1986 payments as directly reimbursable, notwithstanding the change to the PPS system. The least that can be said for the hospital's potential argument to the intermediary, the PRRB, the Secretary, or the district court is that it may succeed. It is not within the province of this court, however, to speculate on whether the agency charged with interpreting and implementing the Medicare Act will reject the appeal.

The most that can be said, from the perspective of plaintiff's current argument, is that the appeal may not succeed, and indeed, that it may not succeed because reimbursement is limited to PPS parameters, or because the appeal is treated as untimely. It cannot be said, however, that the issue is free from doubt, or that the issue raised by plaintiff would be foreign to the PRRB or the district court.[7] Plainly the hospital's assertions are of the *type* that could be anticipated to arise under the Medicare Act. If in fact the limitation on reopening becomes the grounds for an administrative denial, the validity of the reopening limitation can be challenged. 42 U.S.C. § 1395oo(f). While the HCFA is given broad powers to develop its own regulations,[8] the district court plainly has the authority to strike down regulations or agency actions that are at odds with the statute or the constitution. *See, e.g., Oregon v. Bowen*, 854 F.2d 346 (9th Cir.1988); *LGH, Ltd. v. Sullivan*, 786 F.Supp. 1047 (D.D.C.1992).

In sum, plaintiff is confronted with the following circumstance. It attempts to enforce rights under its Medicare contract.

6. As St. Vincent's points out, however, the regulation states that such requests to reopen "must be made within 3 years of the date of the notice of the intermediary or Board hearing decision ... or ... within 3 years of the date of the intermediary decision." 42 C.F.R. § 405.-1885(a).

7. Judge Bork characterized the question of review rights under the Medicare program as a "very difficult problem mired in a very complex regulatory scheme." *Athens Community Hospital, Inc. v. Schweiker*, 743 F.2d 1, 2 (D.C.Cir. 1984).

8. 42 U.S.C. § 1395oo(e).

Those rights are established in a complex legislative and regulatory scheme. An integral part of that scheme is a series of procedures by which cost reports are evaluated against entitlement created by the Act. That administrative regime includes a broad ranging appeal mechanism, and it permits judicial review, exclusively under the Act,[9] in the district courts. Most important, the precise administrative problem that plaintiff anticipates encountering, a rejection on grounds of untimeliness, has its genesis in the existing statutory and regulatory framework itself. It arises within the four corners of that framework precisely because of the way HCFA has chosen to implement the underlying legislation.

The present circumstances are completely unlike those in *Whitecliff*, where the Court of Claims was confronted by a congressionally created entitlement program that provided no judicial review mechanism for whole categories of disputes. With respect to most types of claims, there was plainly no forum other than the Court of Claims in which to obtain judicial review. After 1973, however, the Tucker Act remedy suffers in terms of explicitness by comparison with the jurisdictional grant to the district courts. The Tucker Act, insofar as relevant here, is merely a reagent for converting a legislative grant into a judicially enforceable remedy. When that legislative grant, in this case the Medicare Act, by its terms assigns only to the district courts the obligation to hear Medicare appeals, the bond between the Tucker Act and the legislative grant is negated.

Consideration of what would transpire if the court assumed jurisdiction exposes further the weakness of the hospital's argument. It is not at all clear why a different outcome would be available in this court. The substantive law to be applied is the same. There is only one entitlement statute, and one set of substantive regulations, all of which the hospital agreed to adhere to as part of its contract. The change to the PPS system after 1982 inevitably meant that providers would not be paid in the same way for the same activities. A claim submitted as a 1986 expense may lead to different reimbursement than if the electrical charges had been submitted earlier.

Nevertheless, even if plaintiff could somehow argue that this court's jurisprudence or procedures would lead to a different substantive result, that alone would not warrant our assumption of jurisdiction. Although Congress clearly attempted to create a comprehensive remedial device in the form of the Medicare Act, neither it nor HCFA was compelled to make the remedy boundless.

Nor is it clear why the same limitations on reopenings would not apply in this court. However, even assuming that such limitations would not hamper the hospital here, the result is the same. Those limitations, by their very nature, are not limits on subject matter jurisdiction. To state the hospital's quandary as one arising out of a limitations period is to concede that the administrative body has authority in general to act. Congress delegated to HCFA the authority to shape the contours of the review mechanism. 42 U.S.C. § 1395oo(e). A limitations period is a predictable element of the administrative scheme. Congress designated this administrative scheme, with its concomitant right of appeal in the district court, as the remedy under the Act. Even if the regulations made under that scheme affect the plaintiff unfavorably, or even if these regulations are contrary to law, this court cannot disregard Congress' choice of forum. Nor is it inconceivable that the HCFA, in its regulations, may have inadvertently or deliberately chosen not to address circumstances such as those in which the hospital finds itself. The very existence of a limitations period on reopenings, however, suggests the availability of a forum to hear claims of a certain type, so long as they are not stale. The existence of a limitations period

---

**9.** *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 2463, 45 L.Ed.2d 522 (1975); 42 U.S.C. § 405(h).

also suggests the possibility of making a tolling argument to the PRRB or the district court.

Even, however, if the statutory and regulatory regime ultimately does not provide for substantive review in the district court under all conceivable scenarios, this court is not compelled to fill the gap. *See Schweiker v. Chilicky*, 487 U.S. 412, 423, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988) ("When the design of a Government program [social security benefits] suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies."); *United States v. Erika, Inc.*, 456 U.S. 201, 208–09, 102 S.Ct. 1650, 1654–1655, 72 L.Ed.2d 12 (1982) ("precisely drawn provisions [of Medicare Part B] ... provides persuasive evidence that congress deliberately intended to foreclose further review of such claims.").

Defendant's motion is due to be granted. The Clerk is directed to dismiss the complaint for lack of jurisdiction. No costs.