**MOUNT SINAI MEDICAL CENTER OF GREATER MIAMI, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 260–86C.

United States Claims Court.

Nov. 5, 1987.

Keith R. Anderson, Washington, D.C., for plaintiff.

Richard W. Oehler, with whom were Asst. Atty. Gen. Richard K. Willard and

David M. Cohen, Director, for defendant; Stephen B. Weiss, Office of the Gen. Counsel, Dept. of Health and Human Services, of counsel.

## OPINION

SMITH, Chief Judge.

This case presents novel jurisdictional issues in relation to claims against the United States for medicare reimbursement. The plaintiff, Mount Sinai Medical Center of Greater Miami (Mt. Sinai), a non-profit hospital, seeks judicial review of actions by the Secretary of Health and Human Services (Secretary). The defendant argues in a motion to dismiss that review is not available in this court because the plaintiff has not exhausted its administrative remedies. Defendant further argues that Congress has enacted a specific statutory route for judicial review which plaintiff must follow exclusively. That avenue requires judicial review on the administrative record in the federal district courts. The plaintiff maintains that it has exhausted its administrative remedies. Plaintiff also asserts that although Congress did provide a specific path for review, this case, because of its unusual facts does not allow plaintiff to follow that path. Rather, plaintiff says that judicial review by the Claims Court under the Tucker Act, 28 U.S.C. § 1491 (1982), is appropriate in this case. The court agrees. Therefore, for the reasons given below, the defendant's motion to dismiss is denied.

### Facts

For a proper understanding of the jurisdictional issue presented in this case the court must discuss in some depth the relevant provisions of the Social Security Act (Act).[1] The Medicare Program was created in 1965 by Congress to provide an adequate system of health care for the aged and other qualified individuals. To this end, the government, rather than the individual, pays the bills for covered medical care. Thus, a health care system has been established whereby the government, usually through a network of appointed fiscal intermediaries,[2] reimburses hospitals (providers) which provide health care services to qualified patients covered by the statutory program.

Because of normal cash flow requirements, the Medicare Program anticipates the intermediaries making several interim payments to the providers each fiscal year. At the end of the fiscal year the providers submit, each to its respective intermediary, a cost report detailing annual costs and including requests for reimbursement of costs which the particular provider deems reimbursable. It is the intermediary's function to audit the yearly cost report for compliance with the applicable federal regulations. At the end of the audit period the intermediary issues a Notice of Program Reimbursement (NPR) which reflects the amount which the intermediary believes the provider is entitled to. If the provider disagrees with the NPR, the provider may appeal to the Provider Reimbursement Review Board (PRRB), an adjudicative body within the Department of Health and Human Services, given that certain jurisdictional prerequisites are met.

A provider may get review of an intermediary's decision by following the provisions of 42 U.S.C. § 1395oo (a) (1982) which provide:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by [the PRRB] ... if—

(1) such provider—

(A)(i) is dissatisfied with a final determination of the organization serving

---

1. For a more detailed summary of the applicable statutes and regulations see *Tallahassee Memorial Reg. Med. Ctr. v. Bowen*, 815 F.2d 1435 (11th Cir.1987), and *Athens Comm. Hosp., Inc., v. Schweiker*, 743 F.2d 1 (D.C.Cir.1984).

2. A fiscal intermediary is most often a private organization which contracts with the Secretary to provide various services. These services include determining the amount of reimbursement due providers and making the interim and final payments for each cost year. The fiscal intermediary thus serves both an audit and a comptroller function. In this case Blue Cross and Blue Shield of Florida has been appointed as plaintiff's fiscal intermediary.

as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, ...

(2) the amount in controversy is $10,-000 or more, and

(3) such provider filed a request for a hearing within 180 days after notice of the intermediary's final determination ...

Section 1395oo (d) goes on to provide that:

A decision by the [PRRB] shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the [PRRB] and shall be supported by substantial evidence when the record is viewed as a whole. The [PRRB] shall have the power to affirm, modify or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report ... even though such matters were not considered by the intermediary in making such final determination.

If the provider is still dissatisfied, section 1395oo (f) allows an appeal of the PRRB decision to a district court:

Providers shall have the right to obtain judicial review of any final decision of the [PRRB], or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the [PRRB] or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the [PRRB] determines ... that it is without authority to decide the question by a civil action commenced within sixty days of the date on which notification of such determination is received ...

### a. The Malpractice Reimbursement Issue

When allocating costs between medicare eligible and non-eligible patients, a provider will accumulate the expenses in various "cost centers." The provider then allocates the costs for particular services according to the ratio of medicare beneficiaries to the total numbers of patients. This ratio is generally expressed as a percentage and is known as the provider's utilization rate.

In keeping with the expressed congressional desire to pay all actual costs of providing medicare services, 42 U.S.C. § 1395x(v)(1)(A) (1982); see Community Hosp. of Roanoke Valley v. Health & Human Services, 770 F.2d 1257, 1261 (4th Cir.1985), the Medicare Program has historically reimbursed each provider according to its utilization rate. However, on June 1, 1979, the Secretary issued a new regulation (the 1979 malpractice rule) which singled out malpractice insurance costs from other costs and directly allocated them to the program "based on the dollar ratio of the provider's medicare paid malpractice losses to its total paid malpractice losses for the current cost reporting period and the preceding 4–year period." 42 C.F.R. § 405.452(a)(1)(ii) (1985).

Mt. Sinai, in its cost reports, did not challenge the 1979 malpractice rule as did many other hospitals. Rather, Mt. Sinai, in its 1980–82 cost reports, correctly accounted for its medicare related malpractice costs pursuant to the Secretary's 1979 malpractice rule. Mt. Sinai accordingly was reimbursed pursuant to the 1979 malpractice rule rather than its utilization rate. In 1985, the Eleventh Circuit, the controlling circuit for Mt. Sinai, invalidated the Secretary's 1979 malpractice rule. Lloyd Noland Hospital & Clinic v. Heckler, 762 F.2d 1561 (11th Cir.1985). Thus, Mt. Sinai now seeks reimbursement at its utilization rate for malpractice costs incurred during 1980–82.

### b. The Florida Patients Compensation Fund Issue

In response to a crisis in Florida's malpractice insurance industry, the Florida

Legislature created the Florida Patients Compensation Fund (FPCF). The fund was established as a self-insuring trust fund for Florida health care providers. All Florida providers were effectively required to participate in the fund. Membership fees calculated on a, theoretically, sound actuarial basis were intended to fully finance the fund. However, because the actuarial basis for the fund was unsound, the fund began producing deficits as a result of large judgments entered against its membership. Pursuant to its regulations the fund began assessing fees to reduce the deficits. The first assessment against Mt. Sinai was issued on July 28, 1982 with six others to follow incrementally until January 30, 1986. The total of assessments for the period was $6,136,368. The assessments at issue are, according to plaintiff, directly related to the cost years 1976–82. Thus, Mt. Sinai seeks to allocate these assessments to those cost years. To that end, Mt. Sinai sought to have the FPCF claims added to the cost reports for 1976–79 which then were, and still are, pending at the PRRB.

The PRRB properly refused to consider those claims because they were never included in the cost reports for those years. In addition, Mt. Sinai attempted to reopen the cost reports for 1976–82 with its intermediary, Blue Cross. Blue Cross, however, declined the invitation to reopen the cost reports on the ground that the assessments were more properly allocable to the period in which they were billed. It is this refusal to reopen the cost reports for 1976–82 that Mt. Sinai challenges here.

### Claims Court Jurisdiction Over Medicare Claims

The plaintiff relies upon the continued validity of the doctrine espoused by the Court of Claims in *Whitecliff v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976). Defendant, on the other hand, denies that the *Whitecliff* doctrine has any continued effect. In *Whitecliff* a provider brought suit in the Court of Claims seeking reimbursement of $213,755. The plaintiff in *Whitecliff* had become aware of under reimbursement during the years 1967–70 and

requested from its fiscal intermediaries a retroactive adjustment to correct the inadequate reimbursement. The fiscal intermediaries denied the request and the plaintiff there appealed the denial to the respective appeals committees provided by the intermediaries. Both appeals committees upheld the denial. The plaintiff then brought suit in the Court of Claims seeking judicial review of the intermediaries' actions. The government argued at the Court of Claims that the Act precluded judicial review of the intermediaries' reimbursement determinations. The plaintiff argued that it was entitled to a retroactive adjustment and that it was being denied due process of law.

In contesting Court of Claims jurisdiction over the case the government, as it does here, relied upon *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The *Whitecliff* court, however declined to extend *Salfi* to preclude judicial review over medicare cases arguing that the practical effect of *Salfi* was to enforce the Act's procedures as prerequisites to judicial review. In distinguishing the medicare cases the *Whitecliff* court said:

> By contrast, the medicare statute's express review provisions in effect prior to 1973 apply to extremely limited categories of cases involving providers. To import into the medicare program the *Salfi* preclusion of judicial review (except as expressly authorized) would be to prevent all review of very large categories of cases and issues, including constitutional questions, and to accord absolute finality to adjudications by private organizations like the BCA. [The BCA is the Blue Cross Association, one of Whitecliff's fiscal intermediaries.] Such a result would be of doubtful constitutional validity and would undermine the normal presumption in favor of judicial review. We cannot assume that the Supreme Court would extend the *Salfi* interpretation of section 405(h) to Medicare cases, where the consequences would be so dramatically different, and therefore we adhere to the pre-*Salfi* view of judicial review of Medicare provider disputes: Where the Medicare statute provides for

review, providers and courts must follow the specified procedures and limitations; in other cases, a provider may obtain judicial review, under the general jurisdictional provisions which are applicable, at least so far as to ensure compliance with statutory and constitutional provisions. In this court, 28 U.S.C. § 1491 (the Tucker Act) is the pertinent jurisdictional provision both because of plaintiff's contract with the government and also because the Medicare legislation, fairly read mandates appropriate payment to providers. (footnotes and citations omitted).

*Whitecliff,* 210 Ct.Cl. at 58, 536 F.2d at 350-51.

The defendant now argues that because Congress has included provisions in the Act granting judicial review of PRRB decisions in the district courts, the *Whitecliff* doctrine now has no force. This is not a true characterization of the status of *Whitecliff.* While it is true that Congress has provided, in the years since *Whitecliff,* additional avenues of review; Congress did not preclude the functioning of *Whitecliff* in those now fortunately few instances where the Act is not applicable. For instance, in *Appalachian Regional Hosp. Inc., v. United States,* 217 Ct.Cl. 1, 576 F.2d 858 (1978), the Court of Claims assumed jurisdiction over a hospital's claim of less than $10,000. A claim which is precluded from district court review by the very same statute which grants that review generally. *See* 42 U.S.C. § 1395oo (a)(2) (1982).

■ The court is acutely aware of the historic role that it has inherited as part of the original jurisdiction of the Court of Claims. That role is to provide an ultimate monetary remedy against denials of right by the sovereign where Congress has provided no other forum. In a very real sense, we are the legal treasury of the federal judicial system. Those rights not accounted for elsewhere must be dealt out here. To the extent that particular money claims against the United States are not within the exclusive jurisdiction provided by other statutory schemes, or are not precluded by the Tucker Act, the Claims Court can and

must review those claims. The fact that the Tucker Act has not undergone any substantial changes since its enactment in 1887 is perhaps the most telling evidence of our continued congressional mandate in this regard. Thus, the court is of the opinion that the exercise of jurisdiction over plaintiff's claims is appropriate if plaintiff can show that those claims are not covered by the applicable statutes providing judicial review in the district courts.

### Jurisdiction over the FPCF Claim

#### a. 1980–82 Cost Years

■ The plaintiff's FPCF claims for cost years 1980–82 fall squarely within the rule in *Whitecliff.* For these claims there is absolutely no statutory avenue for judicial review in the district courts. A prerequisite for review in the district courts is a hearing at the PRRB and a prerequisite for a hearing at the PRRB is a timely filing of the claim within 180 days of the intermediary's final determination. Here there was no timely appeal of the cost reports for 1980–82 because the plaintiff simply was not aware of the need to include additional costs in those reports. Thus, for these claims there is no possible avenue of review provided and the court may rightfully review the intermediary's decision not to reopen the cost reports.

#### b. 1976–79 Cost Years

In relation to those FPCF claims for the years 1976–79 which were presented to the PRRB, the court would, if it were necessary, review them on the sole basis that they present the exact same issues as presented by the 1980–1982 cost reports. However, there is independent jurisdiction over the 1976–79 cost reports. The PRRB correctly noted that it did not have jurisdiction over the 1976–79 cost reports because those costs were not covered in the cost reports. As plaintiff points out, the PRRB's determination that it lacked jurisdiction is interlocutory and not appealable to a district court until the PRRB issues a final decision on the cost reports. However, even if plaintiff appeals the FPCF issue to the district court, the district court

is bound to conclude that the PRRB denial of jurisdiction was correct. Thus, plaintiff would again be deprived of meaningful review of the actions of a private organization through no fault of its own.

The cases of *Athens Community Hosp., Inc., v. Schweiker,* 743 F.2d 1 (D.C.Cir. 1984), and *North Broward Hosp. Dist. v. Bowen,* 808 F.2d 1405 (11th Cir.1987), both support the conclusion that the district court could only affirm the PRRB's denial of jurisdiction over plaintiff's claims. In both of those cases the respective courts held that "the scope of jurisdiction conferred by § 1395oo(d) is limited to matters put into dispute by the provider at the time the cost report is filed." *North Broward,* 808 F.2d at 1409. The instant claim is thus outside the scope of relief provided for in § 1395oo (d).

The Eleventh Circuit's recent case of *Tallahassee Memorial Regional Med. Ctr. v. Bowen,* 815 F.2d 1435 (11th Cir.1987) appears at first glance to provide review of these claims in the district court. However, that case distinguishes itself from the present case on two grounds:

> As will be discussed below, however, *North Broward* does not control this case because this case involves a different jurisdictional grant of judicial review, one added by Congress after the cost year involved in the *North Broward* case [that cost year was 1977]. Unlike in this case, the hospitals in *North Broward* were not challenging the validity of a medicare regulation, but were merely attempting to raise with the PRRB claims that they inexplicably failed to raise with their intermediaries.

*Id.* at 1457. Here, as in *North Broward,* the plaintiff challenges cost reports for years prior to the 1980 amendments to § 1395oo (f) which the *Tallahassee* court relied upon. Additionally, the plaintiff here seeks to raise claims which through no fault of its own were not included in the cost reports. For the reasons given above, the court concludes that it does have jurisdiction over the FPCF claims from 1976–82.

This court's grant of jurisdiction over these claims is limited to similar facts.

Central to the court's decision is the uncontestable fact that plaintiff was not aware and could not have been aware of these costs until after the period to appeal had passed. Thus, a plaintiff who intentionally or negligently withheld claims from the PRRB would not find the Claims Court a ready forum as the *Whitecliff* doctrine would give it no remedy. Also, as noted in *Whitecliff,* the court is reluctant to allow decisions of private organizations using government authority absolute finality, especially in light of the plaintiff's constitutional allegations.

### Jurisdiction Over the 1979 Malpractice Rule Claims

■ As regards the 1979 malpractice rule claims the court is also of the opinion that it should exercise jurisdiction. These claims present nearly the identical issues presented in the *Tallahassee* case discussed above. They are, however, distinguishable. In *Tallahassee* the court held that the PRRB had jurisdiction over the claims of providers who had correctly claimed reimbursement according to the 1979 malpractice rule and who later timely challenged the regulations at the PRRB. The *Tallahassee* court concluded that

> a self disallowing provider need fulfill only 42 U.S.C. § 1395oo (a) in order to appeal to the federal courts under the 1980 grant of judicial review in § 1395oo (f). By the terms of subsection (f), a self-disallowing hospital that meets the conditions of subsection (a) can request the PRRB to determine whether it has the authority over a challenge to a regulation: If the PRRB does not have the authority to grant relief to the provider, the provider can appeal to the federal courts. (footnote omitted)

*Tallahassee,* 815 F.2d at 1463. The plaintiff here does not meet the requirements of section 1395oo (a) as it did not file, and had no reason to file, a timely appeal within 180 days of the intermediary's final decision on the 1980–82 cost reports. Also the plaintiff here did not challenge the regulations as did the plaintiff in *Tallahassee.* As a result plaintiff's claims are properly lodged in this court.

Additionally, the court notes that even if *Tallahassee* were not really distinguishable, the court would exercise jurisdiction over those claims as being ancillary to those already properly and necessarily within this court's jurisdiction. The basic allocation of cost issues are the same. Further, plaintiffs who clearly fit within the jurisdictional scope of the Tucker Act, but for an arguable grant of exclusive jurisdiction to another court, should not be required to gamble upon the jurisdictional vagaries in this area for relief. Finally, it would be manifestly inefficient and contrary to the fair administration of justice to make plaintiff try basically the same case in two different forums in order to obtain complete relief.

The defendant also argues that the PRRB would have had jurisdiction if plaintiff would have challenged the 1979 malpractice rule in its 1980–82 cost reports. This argument, however, is not persuasive. Plaintiff is not to be faulted for following the Secretary's current lawful regulations. Clearly, plaintiff has no administrative remedy left, if it ever had one under these facts; therefore, the doctrine of exhaustion cannot bar plaintiff's access to this court. For the reasons given above, Defendant's Motion to Dismiss is denied. No costs.