ST. LUKE'S MEDICAL
CENTER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–218C.

United States Claims Court.

Jan. 22, 1991.

James L. Malone, III, Chicago, Ill., for plaintiff. James M. Gaynor, Jr., Amy E. Hancock, Pamela S. Reiman, McDermott, Will & Emery, of counsel.

John Warshawsky, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Marcus Christ, Of-

fice of General Counsel, Dept. of Health and Human Services, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion to dismiss for lack of subject matter jurisdiction. Defendant asserts, first, that plaintiff failed to exhaust the available administrative remedies in pursuing its claim for Medicare reimbursement and, second, that by statute a health care provider may obtain initial judicial review of a reimbursement decision solely in a federal district court. Plaintiff opposes on the grounds that its failure to pursue administrative remedies is immaterial and that the statutory limitation on choice of forum is inapplicable to this case.

## FACTS

1. *Statutory framework*

This case involves the right to receive reimbursements pursuant to the Social Security Act of 1935, 49 Stat. 620 (codified *as amended* at 42 U.S.C. §§ 301–1397f (1988). The Social Security Act affords "benefits not only to the 'insured worker in his old age,' but also to 'individuals and families when workers retire, become disabled, or die.'" *Bowen v. Public Agencies Opposed to Social Security Entrapment*, 477 U.S. 41, 43, 106 S.Ct. 2390, 2392, 91 L.Ed.2d 35 (1986) (quoting S.Rep. No. 98–13, 83d Cong., 2d Sess., pt. 2, 78 (1983)).

In 1965 Congress amended the Social Security Act of 1935 by adding what is known today as Part A of the Medicare program. Health Insurance for the Aged Act, Pub.L. No. 89–97, 79 Stat. 291 (1965) (codified *as amended* at 42 U.S.C. §§ 1395c—1395i–2 (1988)) [hereinafter "Medicare" or the "program"][1] Medicare provides indirect hospital insurance benefits to Medicare "beneficiaries," who are generally the disabled or the elderly. Under the program, disburse-

ments are not paid to individual beneficiaries. Rather, participating hospitals, known as "providers", are reimbursed for the cost of caring for beneficiaries. A provider routinely receives reimbursements via its "fiscal intermediary" (the "intermediary"),[2] an entity which is typically a private insurance company. The intermediary serves as agent to the Secretary of Health and Human Services (the "Secretary") in reviewing the legitimacy of a provider's claims for reimbursement. 42 U.S.C. § 1395h.

Providers receive Medicare reimbursements for the lesser of the "reasonable costs" or the providers' customary charges for hospital services rendered to beneficiaries. 42 U.S.C. § 1395f(b)(1). Section 1395x(v)(1)(A) defines reasonable costs as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." The program empowers the Secretary, at his discretion, to "provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services of groups of items or serviced to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). Accordingly, the Secretary, through its delegatee the Health Care Financing Administration ("HCFA"), promulgated regulations concerning requests for reimbursement of "reasonable" costs. 42 C.F.R. § 413.30(a)(1) (1989).

To request such a reimbursement, a provider must submit to its fiscal intermediary a cost report detailing the financial outlay for all services furnished to beneficiaries for the preceding year. 42 C.F.R. § 413.20(b). The intermediary appraises the cost report and issues a notice of program reimbursement (the "NPR") disclos-

---

**1.** For thorough canvassing of the legal development and background of the Medicare program, *see Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1438–40 (11th Cir. 1987), *cert. denied*, 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988), and *Athens Community*

*Hosp., Inc. v. Scheiker*, 743 F.2d 1, 2–4 (D.C.Cir. 1984).

**2.** A provider appoints its own fiscal intermediary.

ing the aggregate of reimbursement due the provider and explaining any adjustments the intermediary performed. 42 C.F.R. § 405.1803. If dissatisfied with a NPR, and if the amount in controversy exceeds $10,000.00, a provider may appeal to the Provider Reimbursement Review Board (the "PRRB"), an administrative review panel in the Department of Health and Human Services. 42 U.S.C. § 1395oo(a). The provider must file its appeal within 180 days after receiving notice of the NPR. 42 U.S.C. § 1395oo(a)(3); 42 C.F.R. § 405.1841(a). The Secretary may review *sua sponte* the PRRB's finding within 60 days after issuance. 42 U.S.C. § 1395oo(f)(1).

Judicial review under the program as originally enacted, in general, provided little or no express opportunity for judicial review of determinations made by a fiscal intermediary or the Secretary,[3] since section 205(h) of the Social Security Act stated: "No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as ... [specified in the Act]." Section 405(h) applied to the Medicare portion of the Social Security Act. 42 U.S.C. § 1395ii (1988). *See, e.g., Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Serv., Inc.,* 570 F.2d 660, 666–67 (7th Cir.1977); *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 914 (2d Cir. 1976).[4] *But see Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 57–58, 536 F.2d 347, 350–51 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977) (holding judicial review valid of claim arising from 1967 to 1970); *accord Dr. John T. MacDonald Found., Inc. v. Califano,* 571 F.2d 328, 332 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978). Amendments to the program in 1972 created the PRRB and also granted a health care provider a limited opportunity for judicial oversight by allowing review by a court only where the Secretary caused a modification or reversal of an earlier PRRB decision. S.Rep. No.

1065, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 5992, 5995.

In 1974 Congress expanded the judicial review provisions of the program by implementing the following statutory requirements:

> Providers shall have the right to obtain judicial review of any final decision of the ... [PRRB], or any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice ... is received.... Such action shall be brought in the district court of United States for the judicial district in which the provider is located....

Pub.L. No. 93–484, § 3, 88 Stat. 1459 (codified *as amended* at 42 U.S.C. § 1395oo(f)(1)). This amendment applied to claims involving fiscal years ending on or after June 30, 1973.

Through HCFA, the Secretary promulgated additional regulations establishing substantive qualifications for obtaining exceptions and exemptions to the applicable cost limits and providing a procedure for requesting such exceptions and exemptions. 42 C.F.R. §§ 413.30(e), (f). The regulations permit an exception or exemption if the costs exceeding the limit are reasonable and if the provider demonstrates that

> (i) [a]ctual cost of items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature and scope, compared to the items or services generally furnished by providers similarly classified; and
>
> (ii) Atypical items or services are furnished because of the special needs of the patients treated and are necessary in the efficient delivery of needed health care.

42 C.F.R. § 413.30(f)(1).

Procedurally, the provider must request an exception from the fiscal intermediary within 180 days after the NPR was issued. 42 C.F.R. § 413.30(c). After considering

---

**3.** The PRRB was not yet created.

**4.** These two cases involved claims for fiscal years ending prior to June 30, 1973.

the request, the intermediary makes a recommendation to HCFA, acting for the Secretary, which in turn must respond within 180 days. The intermediary then advises the provider of HCFA's conclusion. HCFA's determination is reviewable by the Secretary or the PRRB. *Id.* Subsequent review by a federal district court is available expressly to the provider. 42 U.S.C. § 1395oo(f)(1). Additionally, a request to reopen a determination of a fiscal intermediary, the PRRB, or the Secretary must be made within three years of notice of the decision. 42 C.F.R. § 405.1885(a).

## 2. *Factual background*

All well pleaded facts in plaintiff's complaint are accepted. St. Luke's Medical Center ("plaintiff") operates an acute care, not-for-profit hospital in Milwaukee, Wisconsin. Plaintiff seeks recovery for $941,-956.00, plus interest, allegedly owed to it under the atypical services exception to the routine costs limit for its fiscal year ending December 25, 1982.

In 1966 plaintiff, as a provider, entered into a written contract with the Secretary to furnish health care services to Medicare beneficiaries. Consequently, plaintiff appointed Blue Cross and Blue Shield of Wisconsin as its fiscal intermediary.

Plaintiff enjoys the reputation as a national leader in the field of cardiac care. This prominence attracts a disproportionately high percentage of the most acutely ill patients. Consequently, plaintiff's costs exceeded the routine costs limit for years 1980 through 1982.

In February 1982, through its intermediary, plaintiff submitted a petition for an exception to the routine cost limit for fiscal year 1980. The basis for the claim was that plaintiff "provided atypical services, handled a greater degree of serious and complicated cases, especially cardiac cases, and, therefore, reasonably incurred greater costs in rendering routine care than other hospitals of comparable size." Compl. filed Mar. 12, 1990, ¶ 15. Plaintiff submitted supporting documentation. HCFA granted the exception in October 1982, citing with

approval the same general factors as set forth by plaintiff.

Plaintiff submitted a subsequent request for an exception for fiscal year 1981, along with supporting documentation. This request was substantively identical to the one filed for the previous year. Although the intermediary urged approval, HCFA denied the request for an exception and demanded further documentation justifying the cost increases that occurred between 1980 and 1981. Plaintiff spent $104,886.00 in hiring the Commission on Professional and Hospital Activities (the "CPHA"), an expert consultant, to perform studies and generate information justifying plaintiff's cost increases.

While the 1981 decision was pending, plaintiff requested, on August 1, 1983, an exception for costs incurred during its 1982 fiscal year. Appended to this request as documentation was a CPHA study. On June 27, 1985, HCFA denied the 1982 request on the basis that plaintiff did not furnish atypical services in 1982. Plaintiff was invited to offer additional documentation relevant to its latest request. As plaintiff framed its complaint, plaintiff did not contest promptly HCFA's denial of a reimbursement for 1982 because

> [a]t the time HCFA denied the 1982 exception request, the 1981 exception request was being vigorously contested and its fate was unclear. Plaintiff decided not to expend valuable time and money in attempting to secure an exception for fiscal year 1982 until HCFA made a final decision with respect to fiscal year 1981.

Compl. ¶ 20. "Instead, it simply sought to await the decision on its 1981 claim before challenging the erroneous decision of HCFA on the 1982 claim." *Id.* ¶ 35.

On December 6, 1986, HCFA disallowed plaintiff's request for an exception for 1981. Plaintiff appealed to the PRRB and, on March 15, 1989, the PRRB granted the exception. The HCFA Administrator, acting on behalf of the Secretary, affirmed the PRRB's decision on May 19, 1989, or roughly six years after the initial submission of the request.

In an attempt to obtain reconsideration of the decision for fiscal year 1982, plaintiff submitted on October 24, 1989, a copy of the PRRB's decision for the 1981 fiscal year and a copy of HCFA's affirmance to its intermediary. Since the facts underlying the 1981 and 1982 requests for exceptions essentially were identical, plaintiff argued that the granting of an exception for 1981 should provide grounds for granting an exception for 1982. The intermediary denied the request as untimely only two days later on October 26, 1989. Plaintiff filed suit in the Claims Court on March 12, 1990.

Concerning the reimbursement request for fiscal year 1982, defendant asserts that plaintiff failed to exhaust its administrative remedies both because no appeal was made to the PRRB within 180 days of the NPR (42 C.F.R. § 405.1841(a)) and because no request to reopen the fiscal intermediary's decision took place within three years of the notice of the decision. (42 C.F.R. § 405.1885(a)). According to defendant, plaintiff's failure to exhaust its remedies precludes review in a federal district court pursuant to 42 U.S.C. § 1395oo(f). Defendant concludes that the Claims Court lacks jurisdiction to entertain this suit because Congress explicitly conferred jurisdiction in federal district courts and then only after a provider had argued its claim before the PRRB or the Secretary. In defendant's words, plaintiff "knowingly disregarded Congress's dictate and should not be allowed to circumvent the mandate of Congress by maintaining such an action here." Def's Br. filed Aug. 1, 1990, at 31.

Plaintiff concedes that normal administrative review is unavailable and that since it did not pursue relief through the PRRB or the Secretary, review in any federal district court is foreclosed. Plf's Br. filed Dec. 3, 1990, at 8. However, plaintiff takes the position that the "unique circumstances," *id.*, of this case, in conjunction with Congress's unequivocal consent to be sued concerning Medicare reimbursements under the Tucker Act, 28 U.S.C. § 1491(a) (1988), establish jurisdiction in the Claims Court. Plaintiff seeks costs incurred in providing atypical health care services un-der the Medicare program of an amount equalling $941,956.00, plus interests, costs, and attorneys' fees.

## DISCUSSION

Upon a motion to dismiss the complaint for lack of jurisdiction over the subject matter, the court must accept as true all undisputed allegations of fact made by the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, the burden of proving jurisdiction rests with the plaintiff. *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 748 (Fed.Cir.1988) (citing cases). This case presents no factual disputes concerning jurisdiction. The legal issue is whether federal district courts have exclusive jurisdiction to hear a claim arising under the Medicare program or whether the claim may be brought properly before the Claims Court. *See Amerikohl Mining, Inc. v. United States*, 899 F.2d 1210, 1212 (1990).

Plaintiff's argument for recovery begins by noting that, for fiscal year 1980, it recovered a Medicare reimbursement based on its status as a provider of atypical services. Initially, HCFA denied a similar claim for an exception for fiscal year 1981 because HCFA was skeptical of purported cost increases that arose during the intervening year. Due to the granting of an exception for 1980, plaintiff argues that HCFA's initial denial of the claim for 1981 was unreasonable. The appeal concerning this 1981 claim was lengthy, with no final decision from the Secretary until May 1989.

While the 1981 appeal was pending, plaintiff filed for an exception for fiscal year 1982, which HCFA denied on the basis that plaintiff did not furnish atypical services in 1982. Plaintiff contends that the overall conduct of HCFA concerning the 1981 and 1982 claims was arbitrary and capricious or, as counsel put it during argument, "flipflopping." Consequently, based on the uncertain status of the 1981 claim, on the cost of submitting an appeal, and on HCFA's unpredictable conduct, plaintiff asserts that it reasonably decided that fur-

ther attempts to pursue its administrative remedy for the 1982 claim would have been futile. In these circumstances, plaintiff argues, the determination to resolve the 1981 appeal first within a reasonable time and then pursue the 1982 appeal made sense. Plaintiff maintains that the 1981 appeal was resolved only after six years is not its fault and that plaintiff's forbearance was reasonable in the circumstances.

Plaintiff does not read the 1972 and 1974 amendments to the judicial review provision of the program in 42 U.S.C. § 1395oo(f)(1), as removing all jurisdiction over Medicare disputes from the Claims Court. It points to *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), and *Mount Sinai Medical center of Greater Miami, Inc. v. United States,* 13 Cl.Ct. 561 (1987) (motion for reconsideration pending), as authority that some Claims Court jurisdiction over Medicare claims remains.

Defendant responds that an express withdrawal of sovereign immunity is not a necessary prerequisite to divest this court of jurisdiction. It further argues that the doctrine of strict construction of waivers of sovereign immunity overrides the concept that repeals of jurisdiction by implication are disfavored, citing *Fiorentino v. United States,* 221 Ct.Cl. 545, 556, 607 F.2d 963, 970 (1979), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980); *see also Harris v. United States,* 841 F.2d 1097, 1100–01 (Fed.Cir.1988).

*Whitecliff* involved a request for a retroactive adjustment to an allegedly inadequate reimbursement made to Whitecliff, a health care provider. Recovery was sought for costs that accrued between 1967 and 1970. Whitecliff's fiscal intermediary, the Blue Cross Association (the "BCA"), denied the request and Whitecliff, in accordance with the BCA's own dispute pro-

cedure, appealed the denial to the BCA Provider Appeals Committee. The denial was sustained on administrative appeal. Whitecliff then filed suit in the Court of Claims.

In construing section 205(h) of the 1935 Social Security Act, the Court of Claims held that judicial review was not precluded in all Medicare reimbursement cases. The court established the following rule:

> Where the Medicare statute provides for review, providers and courts must follow the specified procedures and limitations; in other cases, a provider may obtain judicial review, under the general jurisdictional provisions which are applicable, at least so far as to ensure compliance with statutory and constitutional provisions. In this court, 28 U.S.C. § 1491 (the Tucker Act) is the pertinent jurisdictional provision both because of plaintiff's contract with the government and also because the Medicare legislation, fairly read, mandates appropriate payment to providers.

210 Ct.Cl. at 58, 536 F.2d at 351 (citation omitted). The court went on to state: "For disputes over reimbursements with respect to fiscal periods ending on or after June 30, 1973, Congress has largely resolved the problem of judicial review; only disputes where the amounts in controversy are less than $10,000 are left untreated by statute...." *Id.* at 58 n. 8, 536 F.2d at 351 n. 8 (citation omitted). In concluding that it possessed jurisdiction over pre–1973 Medicare cases, the court reasoned that to preclude oversight by the Court of Claims would run counter to the presumption in favor of judicial review and would "prevent all review of very large categories of cases and issues, including constitutional questions, and to accord absolute finality to adjudications by private organizations like the BCA." *Id.*[5]

---

5. This court has followed the *Whitecliff* rule for Medicare claims arising prior to 1973. *See, e.g., Northwest Hosp. Inc. v. United States,* 4 Cl.Ct. 109 (1983) (reimbursements sought for years 1967 to 1971); *West Seattle General Hosp. v. United States,* 1 Cl.Ct. 745 (1983) (claims implicitly arising before 1973). *Pacific Coast Medical*

*Enters., Inc. v. United States,* 3 Cl.Ct. 140 (1983), another Medicare case, involved a request for a reimbursement of interest that accrued prior to 1973. Concerning the necessity to exhaust administrative remedies as a prerequisite for judicial review, this court stated that where "the administrative appeal would be futile," a provid-

Plaintiff summarizes the rule in *Whitecliff,* as follows: "[T]he Court clearly established that in the absence of specific statutory procedures for, or limitation upon, judicial review, the Court can review provider reimbursement disputes under its generally applicable grant of jurisdiction." Plf's Br. filed Dec. 3, 1990, at 14. In applying this rule, plaintiff argues that since the specific statutory remedy is inapplicable, the broader statutory remedy—the Tucker Act—places jurisdiction in the Claims Court.

Since *Whitecliff* involved fiscal years 1967 through 1970, neither the 1972 nor 1974 amendments, which specifically broadened the availability of judicial review, applied. Accordingly, the *Whitecliff* court decided the case based on the older version of the Social Security Act, which contained a general presumption against judicial review. The present case involves fiscal year 1982 and, hence, is governed by the 1972 and 1974 amendments. On this important fact, *Whitecliff* is distinguishable.

Further, Whitecliff did not forego willingly the review procedures available to it. Rather, the provider exhausted its administrative remedy and only then appealed the denial of a retroactive adjustment to the Court of Claims. An entirely different scenario is presented in the case at bar. Through a conscious and deliberate decision, this provider elected not to avail itself of the review procedures presented to it concerning its 1982 claim. Rather, plaintiff "simply sought to await the decision on its 1981 claim before challenging the erroneous decision of the HCFA on the 1982 claim." Compl. ¶ 35. *Whitecliff* is further distinguishable on this basis.

42 U.S.C. § 1395oo(f)(1) delineates, *inter alia,* the availability of judicial review of a decision by the PRRB or Secretary, as well as the correct forum for any such judicial action. Specifically, the statute permits judicial review of any final decision of the PRRB or any reversal, modification, or affirmance by the Secretary if the prospective plaintiff commences a civil suit within 60 days after receiving notice of the decision. The statute states further that "[s]uch action *shall* be brought in the district court of the United States for the judicial district in which the provider is located...." *Id.* (emphasis added).

This statute contemplates expressly that suits may be brought only in a federal district court. Such an interpretation is consistent with the precedent established by the Court of Claims and the Federal Circuit.

*John Muir Memorial Hospital, Inc. v. United States,* 221 Ct.Cl. 843 (1979), involved a claim by a Medicare provider seeking a reimbursement for fiscal years 1973 and 1974. Although available, plaintiff failed to exhaust its administrative remedies. In granting defendant's motion to dismiss for lack of subject matter jurisdiction, the court reasoned:

A court's horror of leaving a party without a tribunal to enforce a constitutional claim is not a factor when the claim could have been asserted by following an available specified route to secure review.

. . . .

Plaintiff must necessarily be, and is, invoking some law here that is unavailable in the District Court. In *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), we did indeed find in the Tucker Act, 28 U.S.C. § 1491, a consent to suit as to fiscal years before June 30, 1973, by a health care provider, not available or assumed arguendo not to be, in a District Court. We were careful to say, however, that the consent was not applicable to years on and after June 30, 1973, because Congress had resolved the problem as to them, except as to claims under

---

er was not required to needlessly pursue its remedy through administrative channels. 3 Cl.Ct. at 144. The administrative remedy became futile due to a Health and Human Services attorney's written instruction to the intermediary not to pay interest. *Id.* at 143. However, since the *Pacific Coast* claim involved the pre-

1973 period, its approach is not germane in the case at bar. The present suit involves a cause of action for a year subsequent to June 30, 1973, as well as a claim that was never presented, formally or informally, to the PRRB or the Secretary, for review.

$10,000, not here involved. Note 8, 210 Ct.Cl. at 58, 536 F.2d at 351. The consent to be sued is strictly construed. *United States v. Testan*, 424 U.S. 392 [96 S.Ct. 948, 47 L.Ed.2d 114] (1976). A statute consenting to suit in another tribunal is readily to be interpreted as withdrawing consent to suit in the Court of Claims. *E.g., Matson Navigation Co. v. United States*, 284 U.S. 352 [52 S.Ct. 162, 76 L.Ed. 336] (1932) (Suits in Admiralty Act construed to withdraw previous consent to admiralty suits against the United States in the Court of Claims, if they were founded on contracts.) The doctrine of strict construction overrides the doctrine that repeals by implication are not favored. *See also* on a closely related problem, *Brown v. GSA*, 425 U.S. 820 [96 S.Ct. 1961, 48 L.Ed.2d 402] (1976). Where Congress wishes to preserve jurisdiction in the Court of Claims when later consenting to suits elsewhere, it is careful to say that Court of Claims jurisdiction survives, as in 28 U.S.C. § 1346(a) (tax refund claims). Under these canons, nobody seriously contends that 42 U.S.C. § 1395oo(f) does not in general cancel whatever consent was previously given to suits by providers here, except claims under $10,000 and claims as to fiscal years ended before June 30, 1973. To suppose that, in addition, consent survives as to any year where the provider has failed to exhaust its administrative remedy, as § 1395oo(f) requires, is to do violence to the whole doctrine of strict construction of the consent to be sued....

221 Ct.Cl. at 845–46; *see also Alabama Hosp. Ass'n v. United States*, 228 Ct.Cl. 176, 189, 656 F.2d 606, 614 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982) ("[W]here Congress has provided a method for review, *Whitecliff* and its progeny require that we respect that choice."). Plaintiff attempted to distinguish *John Muir* from the case at bar on the basis that *John Muir*, an order, was draconian in view of *Whitecliff.* Plaintiff's position is well taken in that *Whitecliff* recognized jurisdiction in the Court of Claims absent a specific statutory withdrawal. However, *John Muir* reports accurately that the *Whitecliff* decision limited itself to claims for fiscal years before June 30, 1973, and disclaimed consent for the United States to be sued on claims arising thereafter in the Court of Claims if such claims exceed $10,000.00.

Recently, the Federal Circuit employed statutory interpretation in order to determine the correct judicial forum in *Amerikohl.* The case concerned an attempt to obtain reimbursement for reclamation fees supposedly paid in excess of the relevant statutory requirement. In affirming the Claims Court's decision to dismiss for lack of subject matter jurisdiction, the court interpreted the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1276(a)(1) (1982) (the "SMCRA"). The Federal Circuit quoted the statute and stated:

[T]he words 'shall be subject to judicial review in the United States District Court for the District of Columbia Circuit' are plain and unambiguous. This court acknowledges that the word 'shall' is mandatory and not permissive. *See United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 360 [15 S.Ct. 378, 380, 39 L.Ed. 450]. Hence, it appears from the plain meaning of the language in section 1276(a)(1) that Congress intended the District Court for the District of Columbia to be the exclusive forum for challenging national rules and regulations promulgated under the SMCRA.

899 F.2d at 1213.

In rejecting appellant's contention that the Tucker Act conferred jurisdiction on the Claims Court in *Amerikohl*, the appeals court ruled that 30 U.S.C. § 1276(a)(1), and not the Tucker Act, created the right of judicial review under the SMCRA. 899 F.2d at 1215. The court stated further that where Congress indicates a specific forum for judicial review, " 'such a forum is exclusive, and this result does not depend on the use of the word "exclusive" in the statute providing for judicial review.' " *Id.* at 1215 (quoting *Getty Oil Co. v. Ruckelshaus*, 467 F.2d 349, 356 (3d Cir.1972), *cert. denied*, 409 U.S. 1125,

93 S.Ct. 937, 35 L.Ed.2d 256 (1973) (citing case)).

The continued pertinence of the jurisdictional exceptions carved out in *Whitecliff* was lessened significantly by the 1972 and 1974 amendments to the Medicare program. By *Whitecliff's* own language, when the Medicare statute expressly provides for administrative and judicial review, providers and courts must follow the intent of Congress. 210 Ct.Cl. at 58, 536 F.2d at 351; *Alabama Hosp.*, 228 Ct.Cl. at 189, 656 F.2d at 614. Section 1395oo(f)(1) contemplates judicial review by a federal district court of nearly all cases except those in which the claim fails to exceed $10,000.00 or where the claim arose prior to June 30, 1973. *Whitecliff*, 210 Ct.Cl. at 58 n. 8, 536 F.2d at 351 n. 8; *John Muir*, 221 Ct.Cl. at 846. Since plaintiff's claim does not fall within either of these two limited exceptions, jurisdiction does not lie in the Claims Court.

Defendant contends additionally that plaintiff's conscious determination to forego its administrative remedy would bar jurisdiction in a federal district court, and in the Claims Court, as well. Plaintiff failed to persuade the court that the apparent futility of pursuing an administrative remedy takes its claims out of the ambit of 42 U.S.C. § 1395oo(f)(1). The statute expressly states that claims by providers "shall be brought in the district court ... for the district in which the provider is located...." While plaintiff's position may be sympathetic, it finds no legal support. As the Federal Circuit stated in *Amerikohl*, the use of the word "shall" in a jurisdictional statute makes the choice of forum mandatory. 899 F.2d at 1213. In order for jurisdiction to lie in the Claims Court, it would be necessary to imply an exception into the specific and narrow language of section 1395oo(f)(1). The approach to statutory interpretation employed in *Amerikohl* would not countenance this implication.

Plaintiff places substantial reliance on *Mount Sinai*. The case involves post–1973 Medicare claims by the provider for reimbursements allegedly due for both costs associated with medical malpractice insurance and a state-created self-insuring trust fund. The medical malpractice claim arose from the judicial invalidation of one of the Secretary's regulations, a regulation which the provider did not contest at the time of promulgation. The trust fund claim resulted from the retroactive assessment upon the provider of costs for previous fiscal years. With regard to this latter claim, the court observed that the provider "was not aware and could not have been aware of these costs until after the period to appeal had passed...." 13 Cl.Ct. at 566. Citing *Whitecliff*, the court held that it possessed jurisdiction to consider both claims.

*Mount Sinai* is factually inapposite to the case at bar. The trust fund claim arose out of an assessment made after the time for appeal expired, whereas in the present case plaintiff knew of the existence of its claim during the appeal period, but decided deliberately not to contest its claim at that time. The malpractice issue in *Mount Sinai* involved the invalidation of a regulation, thereby creating a cause of action. Here plaintiff does not contend that subsequent events changed the applicability of a regulation. These factual differences aside, *dictum* in *Mount Sinai* expressed the view that "a plaintiff who intentionally or negligently withheld claims from the PRRB would not find the Claims Court a ready forum as the *Whitecliff* doctrine would give it no remedy...." 13 Cl.Ct. at 566. Consequently, *Mt. Sinai* would not offer plaintiff a safe harbour.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is granted. The Clerk of the Court shall dismiss plaintiff's complaint for lack of subject matter jurisdiction. Accordingly, costs may not be assessed.